ILLINOIS CENT. R. CO. v. DAVIDSON.

(Circuit Court of Appeals, Seventh Circuit. November 27, 1894.)

No. 179.

CARRIERS OF PASSENGERS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

A passenger who unnecessarily and negligently exposes himself to danger while alighting from a train is guilty of contributory negligence, even though he does not know of the dangers to which he is exposed.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

Action on the case of Wilbur F. Davidson against the Illinois Central Railroad Company. Plaintiff obtained judgment. Defendant brings error.

This is an action brought by Wilbur F. Davidson, the defendant in error and plaintiff below, against the Illinois Central Railroad Company, to recover damages for a personal injury to the plaintiff, the result of an accident happening upon defendant's road in the city of Chicago, on February 27, 1893. The plaintiff was a citizen of Michigan, and resided at Port Huron, in that state. He was engaged in the business of selling on commission various kinds of electrical apparatus for the General Electric Company of New York. In the latter part of February, 1893, he came to Chicago, with a Mr. Annesley, for the purpose of showing him a certain electric plant in active operation, of the kind sold by plaintiff, situated at Hyde Park, in Chicago, near the line of the defendant's railroad. Mr. Annesley was an expert for another company, who wished to buy an apparatus. On arriving at Chicago, Davidson, the plaintiff, arranged with John L. Martin, a friend of his, residing in Chicago, and engaged in the same business, to go with plaintiff and Annesley to Hyde Park, to examine this plant. They all embarked at Van Buren street on a suburban train belonging to the defendant at about 5:45 o'clock on the evening of February 27th, and reached Hyde Park station at 6:10 p. m. The accident happened after the plaintiff and his party had left the car at Hyde Park. The railroad company, pursuant to an ordinance of the city, had, shortly previous to this time, been engaged in raising its tracks at this point, of which they had had theretofore six in use. The four most easterly of these had been raised to a height of nineteen feet above the city datum, by substantial earth embankments. Trains were running on all of these four tracks. The road ran at this point north and south. The most westerly of these four tracks was the regular south-bound suburban track, and over which the plaintiff passed. The next most westerly track was the north-bound suburban track. The third track, counting from the west, was for south-bound through passenger and freight trains, and the most easterly track was for north-bound through passenger and freight trains. The two other tracks lying west of these four had not been raised, and were not then being used. A platform, 230 feet long, had been provided by the company for the use of passengers on the west side of the track over which the plaintiff passed, leading down north by a pair of stone stairs into Fifty-Third street. This platform and stairs were built and intended for the use of passengers landing at Hyde Park from these suburban trains. There was no platform on the east side of the track intended

for passengers. There was planking, however, placed between the different tracks, and east of all was a platform ending in an incline leading down to the level of the street, for the purpose of carrying baggage to and from the through trains. The evidence of plaintiff, however, showed that people living on the east side of the tracks were in the habit of getting off on that side and crossing the other tracks, and some of the evidence tended to show there were stairs not far distant on that side, where passengers descended to the street. This was denied by the witnesses for the defendant. On the arrival of the train at Fifty-Third street, about dark, Mr. Davidson and his friends got off on the east side, and crossed over track No. 2, and started to walk north upon the planking between that track and No. 3. For some cause, not explained, Martin and Annesley got off a little sooner than Davidson, and Davidson lost sight of them. He says, after alighting there were people between them and him, and he could not see them; that he stepped out of the car on the platform at the north end, and looked to the right and left, and did not see them, and that a trainman, or person in uniform that he took for a trainman, standing right opposite to him on the platform of the next car, seeing him, plaintiff, hesitate, said, "This way," or "Down here," or "This side," by which plaintiff understood the man to mean that his friends had gone that way; that he saw other people getting off there, and that he got off upon the ground, looked up and down to see there was no train coming, and then crossed over one track upon the planking between two tracks,—the first one he came to; that he looked up, and saw people going north, and among them his two friends, and that he walked rapidly along in that direction; that there was no platform there on that side, but only a board or plank walk on a level with the other tracks; that he walked a short distance, when a freight train came up from the north, on his right side, and that a little after he felt he had been hit, and lost consciousness. The train that struck him, however, was not the freight train which he saw going south, but a suburban passenger train from the south on track No. 2, west of him on his immediate left, and which he had just crossed. He was knocked down, receiving a blow on the head, and other injuries, and was taken by his friends to a drug store near by, and from there back to the city that night. The evidence shows that these railroad tracks were 13 feet apart from center to center; that the width of the suburban coaches, as well as the freight cars, was 8 feet 8 inches, outside measurements; that two such cars, passing each other, would leave a space between them of 4 feet 4 inches; that the planking between the tracks, upon which the plaintiff was walking while injured, consisted of five 1-foot planks, laid parallel with the tracks; that the distance between the east rail of the north-bound suburban track and the west rail of the south-bound through track, on which the freight train passed, was 7 feet 11 inches; that there was a space of about 9 inches between the edge of the planking and the rail on either side; and that the planking was laid on about the same level with the tracks. The evidence of defendant tended also to show that this planking laid between the tracks was placed there for the convenience of passengers arriving on the north-bound suburban and the south-bound through tracks in getting from their respective trains to the platform and stone steps on the west side of all the tracks, and leading down through the stone abutment to Fifty-Third street. These are the main facts, so far as seems necessary to state them for the proper understanding of the points of law.

Sidney F. Andrews (James Fentress, of counsel), for plaintiff in error.

Edward R. Woodle, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge (after stating the facts as above). There were a great many exceptions taken by the defendant to the intro-

duction of evidence upon the trial, as well as to the charge of the court, and to refusals to give special instructions, but it will be unnecessary to notice them all. One of the principal contentions on the part of the plaintiff in error is that the case was submitted upon issues not raised by the pleadings, and that under the allegations of the declaration there could be no recovery upon the evidence submitted. But we think there is no substantial variance between the pleadings and proofs which should prevent a recovery. The negligence on the part of the company, if there was any, consisting in constructing its tracks, and planking between, and running trains in such a way that the cars of passing trains would extend upon either side over the edge of the planking, so that in running their trains, as was done in this case, one on each side of the walk or planking, it left a space of only four feet and four inches between passing trains for passengers to walk upon, so that a passenger, to avoid being struck, must take care to keep near to the center of the planking; also in permitting or directing passengers to alight upon the east side of the track in the nighttime, where there was no depot or platform provided for them, and where trains were frequently passing each way, so that the passenger, unless very cautious, would be in great danger of being hit by a passing train. The evidence in this case showed that not only the plain''T, but Annesley and Martin, were struck by one or other of those two trains, which were passing at the time they were endeavoring to make their way between the tracks. The plaintiff was seriously injured, the other two but slightly. But the company was not misled by any variance between the pleadings and proofs. In fact, we think the declaration, containing as it does, the following and other similar allegations, is all that it need be to admit the evidence:

"And it then and there became and was the duty of the said defendant to provide reasonably safe means at its said Hyde Park station, whereby the said plaintiff could leave the train and premises of the said defendant without unnecessary or unreasonable hazard or injury to his person; but the said defendant, disregarding its duty in that behalf, carelessly, negligently, and willfully, then and there, at, to wit, its said Hyde Park station, provided means for leaving its said train and premises that, as the said defendant well knew, were grossly unsafe and inadequate in this, to wit: It then and there provided a narrow platform of the width, to wit, of four feet, between two of the tracks of its said railway, and close to, to wit, within one foot of, the rails thereof, on either side of said platform, for its passengers and the said plaintiff to go and walk upon in leaving the train aforesaid, at, to wit, its said Hyde Park station, which platform was of insufficient width to permit passengers to be or walk thereon with reasonable safety from injury from passing trains, and was so constructed that the defendant's engines and trains running upon its two tracks last mentioned, in passing by the said platform on either side thereof, extended, to wit, six inches over the said platform, leaving an unreasonably insufficient and narrow space for the defendant's passengers upon said platform between such trains when so passing each other, of but, to wit, three feet in width; and also permitted and caused its servants in charge of its said trains to manage and drive the same in approaching and passing the said platform at frequent intervals and at a rapid and dangerous rate of speed, and by reason of the said grossly and inadequate and unsafe means so afforded its passengers and the plaintiff, as aforesaid, the said defendant then and there exposed its

passengers and the said plaintiff upon the said platform to great and imminent danger of being struck and injured."

If the planking between the tracks was intended for the use of passengers to walk between trains passing in opposite directions, as was done in this case, it seems quite evident that the construction was faulty, or that the running of trains extending over the planking, while passengers were walking on it, was gross negligence. But the contention of the company was that this planking was not intended for any such use, but was for the convenience of passengers in crossing the tracks when there were no trains running, in order to reach the platform and steps on the west side, built expressly for the use of passengers in leaving these trains. For such a purpose there was no evidence tending to show that the planking was not entirely adequate. It was only when passengers attempted to walk lengthwise on the planking while trains were coming along that the danger arose.

Another exception and assignment of error relates to the evidence upon the matter of damages. The declaration did not contain an allegation of special damage, and the plaintiff on the trial was permitted to testify, against the defendant's objection, that his earnings from profits arising from commissions on sales in his regular employment had amounted for the two or three previous years to the sum of $25,000 annually, and for 1891 to the sum of $31,000. It is contended that this was error, as no special damages were alleged. This is a question arising under the law of pleading in Illinois, where the decisions seem to be in some conflict, and we have not deemed it necessary to determine it in view of the fact that we find the next assignment of error to be considered conclusive against the judgment, and as, if there should be a new trial, it will be competent for the plaintiff to ask to be allowed to amend his declaration in this regard, if he should be advised that such a course were necessary or prudent.

Some special instructions were asked on the trial by defendant's counsel on the question of contributory negligence on the part of the plaintiff, which the court refused to give, but in its general charge gave the following, which was the only instruction given on that subject, and to which proper exception was taken, to wit:

"(2) The next question would be whether the plaintiff himself was guilty of contributory negligence, for, although it might be the duty of the railroad company to prevent passengers from alighting on the east side of their cars at this particular place, and under the dangers that surround such a discharge of their passengers, yet, if the plaintiff knew of the danger, and in the face of that knowledge got down on that side of the car, and met with this injury, the railroad company would not be liable. For that purpose you have a right to look into the plaintiff's knowledge on that subject. Had he traveled over that road,—over that suburban line, and gotten off at that place before? Is there any evidence that he had the dangers of that place in mind? Is there any evidence that he knew, when he was getting off on the east side of the car, he was getting off on the tracks instead of on the platform that was provided for that purpose? If you can find any evidence in the record to that point, it is your duty to look at it, and if you find that the plaintiff, at the time that he alighted, knew, or had good reason to

know from his past experience,—if he had any past experience at that place, —of the dangers that menaced him there, then he is not entitled to recover; but if he did not have such experience, and did not have such knowledge, although other passengers may have had,—although the man whom he accompanied may have had,—he would be, nevertheless, free from the charge of contributory negligence, and would be entitled to recover, the other element of negligence on the part of the railroad company being made out."

This instruction is wrong in itself and wrong in not covering the entire ground which such an instruction should cover. By this instruction the whole question of contributory negligence was made to turn upon a matter of fact of which there had been no dispute in the testimony, to wit, whether or not the plaintiff had been there before, got off at the same place, and become acquainted with its dangers. The plaintiff testified he had never been there before, and there was no evidence to the contrary, and the jury were told that they should look into the evidence, and, if they found that the plaintiff, at the time that he alighted, knew or had good reason to know from his past experience,—if he had any past experience at that place,—of the dangers that menaced him there, then he would not be entitled to recover; but if he did not have such experience, and did not have such knowledge, although others may have had,— although the men whom he accompanied may have had,—he would be, nevertheless, free from the charge of contributory negligence, and would be entitled to recover, the other element of negligence on the part of the railroad company being made out. As there was no dispute about the plaintiff ever having been there before, or ever having had any past experience at that place of the dangers that menaced him there, this instruction, withdrawing as it did from the jury all consideration of contributory negligence founded upon other considerations, was equivalent to directing a finding in favor of the plaintiff upon the question of contributory negligence, and submitting the case to the jury upon the question of the defendant's negligence alone. The jury was nowhere told that if the want of ordinary care and prudence upon the plaintiff's part contributed materially to produce the injury, he could not recover. Of course, the plaintiff's previous knowledge or want of knowledge of the place was a material circumstance to be considered by the jury in determining the question of contributory negligence, but it was not the only circumstance to be considered. Whether he had had any past experience of the dangers of the situation or not, he was bound to exercise his senses. He must use his eyes and ears, and exercise the care and prudence which a man of ordinary care and prudence would be expected to use in the same circumstances to avoid accident. If the question had been submitted to them, who can say that the jury might not have found that the plaintiff did not exercise ordinary care in making inquiry as to the proper place of alighting from the train, or that he was guilty of negligence in not keeping a more constant lookout for approaching trains while he was walking between the tracks upon the planking. None of these questions, or that of contributory negligence generally arising from any cause, were submitted to the jury.

On the question of the plaintiff's negligence, the following special

instructions were asked for by defendant's counsel, and refused by the court, and exceptions duly taken:

"(4) Where a proper landing place is provided, and the passenger knows, or would, by the exercise of ordinary care, have ascertained, its locality, he should make his exit at the place so provided; and if, in attempting to alight elsewhere, he unnecessarily and negligently exposes himself to danger, and is thereby injured, this injury is the result of his own act, and he cannot recover damages therefor from the railroad company. (5) If you believe from the evidence that the plaintiff knew, or would, by the exercise of ordinary care, have known, that the planking between tracks 2 and 3 was not of a reasonably safe width for him to walk or remain upon should another train pass by upon track 2, and you further find from the evidence that he voluntarily and unnecessarily remained on such planking, and by reason thereof was injured as complained of, then the plaintiff is not entitled to recover, and your verdict must be for the defendant."

We see no good objection to either of these requests, and, as nothing in the general charge covered the same ground, we think it was error not to give them. For these reasons the judgment is reversed, and the cause remanded to the circuit court for a new trial, or for such proceedings as may be proper.