or materialman who performs labor, or furnishes materials for the improvement of real property "with the consent or at the request of the owner thereof." It is not contended that defendants ever requested plaintiff to do the work for which it seeks to establish a lien. Their consent is sought to be implied from the fact that their lease to the Everett House Company contains the customary clause whereby the lessee "agrees to keep the premises in good order and repair during said time and at its own cost and expense." We do not deem it necessary to follow the plaintiff through its elaborate argument as to whether or not this agreement on the part of the lessees binds them to do any more than would be required of them by law, if no such clause had been inserted in the lease. The point at issue rests upon no such consideration, and is conclusively settled by ample authority. The rule is that a mere general consent or requirement on the part of the owner that the lessee may or shall at his own expense make alterations and repairs to the premises does not constitute consent within the meaning of the lien law. Hankinson v. Vantine, 152 N. Y. 20, 46 N. E. 292; Beck v. Catholic University, 172 N. Y. 387, 65 N. E. 204, 60 L. R. A. 315; Rice v. Culver, 172 N. Y. 60, 64 N. E. 761; Conant v. Brackett, 112 Mass. 18. The cases in which such a consent has been implied are those in which the owner has specifically contracted for, or with a view to the particular improvement which the tenant has put upon the property, such as Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053, and Barnard v. Adorjan, 116 App. Div. 535, 101 N. Y. Supp. 502, or those in which it has appeared that the owner has done some affirmative act respecting the particular improvement from which his knowledge and consent may properly be inferred, such as Nat. Wall Paper Co. v. Sire, 163 N. Y. 122, 57 N. E. 293, and Butler v. Flynn, 51 App. Div. 225, 64 N. Y. Supp. 877. In the present case the repairs were of a nature such as are frequently required wherever elevators are used, and there is absolutely nothing from which it may be inferred that the landlords knew of or anticipated them, or made the lease with reference to them.

The determination of the Appellate Term is right, and must be affirmed, with costs. All concur.

---

HOWARD v. FORTY-SECOND STREET, M. & ST. N. AVE. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. May 8, 1908.)

1. CARRIERS—STREET RAILROADS—PASSENGERS—INVITATION TO BOARD CARS.
   The fact that a car approaching a crossing slowed down after a person had signaled it to stop was not necessarily an invitation to such person to board the car; the motorman being bound to keep the car under control as it approached the crossing.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1154–1167.]

2. SAME—EVIDENCE—SUFFICIENCY.
   In an action for injuries to a person while attempting to board a slowly moving street car caused by the car suddenly increasing its speed, evidence held not to show that such person was invited to board the car.

3. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
In an action for injuries to a person while attempting to board a slow-ly moving car, caused by the sudden increase of its speed, evidence *held* not to show that defendant was guilty of negligence, or that such person was free from contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1159–1161, 1307–1314.]

Scott, J., dissenting.

Appeal from Trial Term.

Action by Frederick W. Howard against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company and others. From a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial, defendant, the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company, appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Charles F. Browne, for appellant.

James C. Cropsey, for respondent.

INGRAHAM, J. The action is for personal injuries caused to the plaintiff while attempting to board a moving car at the corner of 102d street and Broadway on the 26th of December, 1906, about 11 o'clock in the evening. At the time of the accident the subway was being constructed at this point, and the space between the tracks had been excavated. The plaintiff, intending to go up town on the night in question, stopped at the southeast corner of Broadway and 102d street, and signaled to an approaching car to stop. The car slowed down, so that as the rear of the car approached him it was moving, but very slowly. The plaintiff took hold of the stanchion on the body of the car with his right hand, and the stanchion on the dashboard with his left, and put his left foot on the step, when at that moment the car gave a jerk forward, and broke the grip his right hand had on the rail; that this swung him off the step but he still held on with his left hand; that he was then swung around the rear of the car, and ran after the car for some distance when he lost his grip and fell down, and that is all he remembered. On cross-examination he said he was accompanied by a friend named Crawford, that, as the car started, he held on to the stanchion on the rear dashboard and ran along with the car for a few steps, probably 10 to 12 feet (subsequently saying it was about 20 feet), thinking that he could get back on the car. If he had let go when the car started, it is quite clear that he would have sustained no injury, but it was because of his retaining his hold upon the car after it started and running along with it that he fell into the excavation. He testified, further, that he did not know whether there were any passengers in the car; that the car was light and the shades of the car appeared to be up, but he could not swear that they were; that he did not see the gates closed, and did not see that they were open; that he did not see the gates of the car in front of him as he held on to the car. When asked whether he would swear that the gates were open, he replied that he thought they were, but the nearest he could come to it was that he

thought the gates were open. Plaintiff stated that when he first signaled the motorman to stop he noticed the motorman put on the brake to stop the car; but, as the car was approaching a crossing and the motorman was bound to keep it under control, it did not follow that the slowing down of the car was intended as an invitation to the plaintiff to board it. The plaintiff knew of the excavation, and was familiar with the situation as he was in the habit of traveling up and down the line daily, and testified that he thought that by running after the car he might get on it; that the car might stop; that he gave no signal to the conductor, as he did not see the conductor at all. Crawford, the plaintiff's companion, testified that he left the plaintiff on the sidewalk and started to walk south on the east side of Broadway; that as he was walking down he saw the north-bound car approaching; that the car was then slowing down about 30 to 50 feet from the corner; that he then heard a shout, turned around, and saw the plaintiff's feet disappearing into the excavation; that he did not pay any particular attention to the car, and did not notice whether the blinds on the sides were up or down; that after the accident he noticed that a gate was open, but did not pay any particular attention to it before; that he did not notice whether there were any passengers in the car before the accident, but that there were no passengers in the car after the accident; that the car stopped just above 102d street. On behalf of the defendant, the motorman, conductor, two persons who were at the corner of the street, and a policeman who saw the car just before the accident testified that this was what was called a "dark" car carrying no passengers and with the gates shut.

The court charged the jury that the first question for them to determine was whether this was a closed car, not intended for the reception of passengers, or a car fully lighted with the shades up and the gates open, inviting passengers to enter. A consideration of this testimony establishes that a finding of the jury that this car was carrying passengers was clearly against the weight of evidence. It would seem that the plaintiff was not in a condition to be very accurate as to what he saw when he attempted to board the car. He would not swear that the gates were open, or that, there were no passengers in the car, and his companion expressly disclaims any knowledge of the car before the accident. On the other hand, there is uncontradicted evidence that the car was running as a dark car, was not carrying passengers, and that no fact existed which justified the plaintiff in assuming that the car was about to stop. It is hardly possible that a car carrying passengers at this hour of the night on an up-town trip would have been empty. Plaintiff was in the habit of using these cars constantly, was perfectly familiar with the location, and knew the regulations in regard to the cars stopping to receive passengers only after crossing the streets. Any finding of the jury from this evidence that there was any invitation to the plaintiff to board the car or that he was justified in assuming that the car slowed down to enable him to board it was without evidence to support it. But, assuming that he supposed the car had slowed down to receive him, it seems to me that he was clearly guilty of contributory negligence. Knowing that the street had been excavated for the construction of the subway, he was chargeable with

knowledge that, if he ran along with the car, he was liable to fall into the excavation. He says that, as the car approached and had reduced its speed, he attempted to board it without waiting for it to stop; that its speed was then accelerated so that he lost the hold of his right hand on the rail, but still maintained his hold with the left hand; that he ran after the car to get on board, and continued following it for from 12 to 20 feet. Under any circumstances with the speed of the car suddenly accelerated this would be a dangerous operation. When the car suddenly shot ahead, he must have then appreciated that it was not intended that he should board it on the south side of the street, and that the car, therefore, had not slowed down for the purpose of enabling him to get on board. If he had simply released his hold at that time, he would have been in no accident. It was not caused by the sudden starting of the car, but by his running after the car with the expectation of boarding it, which caused him to be precipitated into the excavation. His being dragged along by the car was not an involuntary act which was the natural consequence of the sudden start of the car, but, as plaintiff testified again and again, it was the result of his determination to board the car whether it stopped or not, and, knowing as he did of the condition of the street, I think it appears that the accident was not the result of any negligence of the defendant, but solely the act of the plaintiff in exposing himself to the accident that resulted, and for which he cannot hold the defendant liable.

The verdict so far as it finds that the plaintiff was ever invited to board this car, that the defendant was guilty of negligence that caused the injury, or that the plaintiff was free from contributory negligence is without evidence to support it.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except SCOTT, J., who dissents.