# CHARLESTON.

## HOYLMAN v. KANAWHA & MICHIGAN RY. CO.

Submitted June 11, 1908.    Decided March 2, 1909.

1. CARRIERS—*Injuries to Passengers—Contributory Negligence.*
    The general rule is that passengers getting off a moving railroad train are chargeable with contributory negligence and cannot recover for injury received therefrom. (p. 263.)

2. SAME—*Burden of Proof.*
    The act of getting on or off a moving train is evidence of contributory negligence, and imposes upon one who is injured in doing so the burden of proving that the peculiar circumstances of the case justified him in such course. (p. 265.)

3. APPEAL AND ERROR—*Disposition of Case—Reversal—New Trial.*
    When in an action against a railroad company for personal injury to a passenger the evidence is such that a verdict for the plaintiff should be set aside, the circuit court, if asked, should direct a verdict for the defendant, and if it refuses, the appellate court will reverse judgment and verdict, and remand the case for a new trial, unless this Court can see clearly that the plaintiff cannot better his case upon another trial. (p. 270.)

Error to Circuit Court, Kanawha County.

Action by James H. Hoylman, administrator, against the Kanawha & Michigan Railroad Company. Judgment for plaintiff. Defendant brings error.

*Reversed.*

BROWN, JACKSON & KNIGHT, for plaintiff in error.

A. M. BELCHER and C. J. VAN FLEET, for defendant in error.

BRANNON, JUDGE:

John L. Porter took passage on a train of the Kanawha & Michigan Railroad at Charleston to go to Wicher, a flag station on that railroad, and in getting off the train was killed, and his administrator recovered in the circuit court of Kanawha county a verdict and judgment for five thousand dollars against the railroad company, and the company brings the case here.

There is no conflict of evidence in the case. Tested by the evidence adduced by the plaintiff the facts are: That Porter sat in the third seat some ten feet from the door of the car,

and he was engaged in active conversation with a passenger, Garten, in the next seat behind him. A friend named Kirby when the train stopped went to Porter's seat and carried a bundle out for him and got off the train. Porter did not go with him. Three or four other passengers got off the train. Porter lingered in his seat, though the train had stopped, talking to Garten in the next seat behind. He lingered so that that passenger, Garten, who remained on the train, warned Porter that he had better get off the train while it stopped. Porter started for the door and before he got to the door, indeed before he left his seat, the train started, but Porter went on down the steps when the train was moving and stepped on the platform holding to the railing of the car with his right hand, and did not let go of it, but held to it while he took two or three steps in the direction the train was moving and increasing in speed, and he lost his balance and fell under the wheels. Before he got out of the door the train was moving. The conductor swears that a stop of the usual length for that station was made. No evidence contradicts this. Other passengers, three or four, got off. This affords evidence that the length of stop was reasonable. *Hurt* v. *Railroad,* 4 Amer. St. R. 374. There was no crowd. The conductor swears that he stood, as he usually did, at the other end of the car before the one in which Porter rode and looked through both cars to see that all the passengers were off, and did not see Porter. There is no contradiction of the conductor in this. A witness of the defence uncontradicted says Porter was still talking to Garten at his seat when the train started. This would show that Porter had not yet come out of his seat into the aisle, but was tarrying in his seat talking to Garten. Garten's evidence confirms this. The evidence clearly shows that before Porter got to the door the train had started. The evidence shows that Porter was well acquainted with this station and had reason to know that the usual stop there was of short duration. "All experience has demonstrated that to get off a moving car is highly dangerous; therefore it is held that such an act is negligence *per se,* and the passenger if thereby injured, except in very rare cases, is guilty of contributory negligence and cannot recover." *O'Toole* v. *Railroad Co.,* 158 Pa. St. 106. "An adult who knowingly and unnecessarily steps from a railroad train in motion is guilty of contributory negli-

gence as a matter of law." *Walters* v. *Chicago & N. W. Ry. Co.*, (Wis.) 89 N. W. 140. Such is held to be the law in most of the courts. 2 Wood on Railroads, 1292, says that in view of the danger necessarily attending such an act it should be held, as a matter of law, that it is negligence to attempt to board or alight from a train while it is in motion, and the question should not be left to the jury, unless there are exceptional circumstances tending to excuse or justify the act. "And the great weight of authority favors this view. The failure of the company to stop its train at a station as it ought to do, or to stop it for sufficiently long time, does not justify a passenger in leaving a moving train; his proper course is to be carried on until the train stops, and if he sustains pecuniary or other loss from being carried beyond his station his remedy lies in an action for damages." The same in Hutchinson on Carriers, sec. 1180. Now, what fault is imputed to the company? Nobody claims that the conductor or other trainman saw Porter getting off. The claim is that the stop was not long enough in time. But in the first place the evidence is that the stop was for the usual time at that station, and this is proven by the fact that several other passengers got off safely. There is no proof clear that the stop was not reasonable. But suppose that the stop was not of the proper length of time, the law just cited from Wood and Hutchinson says that even if the company was negligent in this respect the passenger must not run the risk of alighting. That is no reason for running a plain risk, especially by an aged person. *McDonald* v. *Railroad Co.*, 87 Me. 466, says that it is the duty of the company to stop a sufficient length of time to give passengers reasonable opportunity to alight with safety. "But the failure of the company to stop its train at a station as it ought to do or to stop for sufficient length of time does not justify a passenger in leaving a moving train." In that case we find that he gets off at his own risk. I find in *Simmons* v. *Air Line &c. Co.*, 120 Ga. 225, this: "If with a clear chance to avoid the consequences of defendant's negligence or breach of duty the plaintiff voluntarily assumes the risk occasioned thereby, such conduct on his part is not merely contributory negligence, lessening the amount of damages, but a failure to avoid danger, defeating the right to recover." "If all you know of it is that a passenger jumps from a train in motion and is injured, you

would charge him with carelessness for the act." *Shennon* v. *Railroad Co.,* 78 N. E. 59. The case in 87 Maine says that, "The burden was on the plaintiff to prove that he jumped from the train under exceptional circumstances that would justify or excuse such an act of imprudence." So holds *Browne* v. *Railroad Co.,* 108 N. C. 34. The North Carolina court in *Morrow* v. *Atlanta &c. Co.,* 46 S. E. 12, held that a person who "alights from the train while traveling at the rate of three to four miles an hour and with its speed steadily increasing, is guilty of contributory negligence as a matter of law precluding recovery." The train in this case was going faster than that, the engineer swears eight or ten miles an hour when Porter alighted. The evidence clearly shows that Porter delayed leaving the train and had to be warned to do so by Garten. "Where a passenger delays for an unreasonable time, and it is not apparent to the agent of the carrier that he is either boarding the vehicle or carriage, the carrier will not be held responsible for a resulting injury." 5 Am. & Eng. Ency. L. 579. A passenger seeing that a train had passed a station and was increasing in speed jumped from it. It was held that he could not recover, "even though the railroad company was negligent in management of the train." *Brown* v. *Chicago &c. Co.,* 80 Wis. 162. *McDonald* v. *Montgomery R. Co.,* 110 Ala. 163, holds, "When a person steps from a moving car without any necessity therefor and is injured, which injury would have been avoided if he had remained on the car, he is guilty of such contributory negligence as will preclude his recovery." That it is negligence to alight from a moving train has been held by the courts of New York, Pennsylvania, Massachusetts, Maine, Michigan, Wisconsin, Iowa, Alabama, Georgia, Tennessee and North Carolina. *Mearns* v. *Railroad Co.,* 163 N. Y. 108; *Brown* v. *Railroad Co.,* 181 Mass. 365; *Werbowloske* v. *Railroad Co.,* 86 Mich. 239; *Newlon* v. *Railroad Co.,* 127 Iowa 654; *Whelan* v. *Railroad Co.,* 84 Ga. 506, and cases above cited. Porter was a man of seventy-three years. This called on him to be careful and prudent. The case of *Cumberland V. R. Co.* v. *Maugans,* 61 Md. 62, says in the opinion that "every one would pronounce it an act of reckless imprudence for a person to jump from a train of cars when in rapid motion, or at night and in the dark, when dangers or obstructions that could not be seen were in the way, or for a

person of impaired health and in a weak physical condition, or of an *advanced age* to make the attempt when the train was in slow motion." 1 Amer. & Eng. Anno. Cases, 779, has the following: "Even where the train is moving slowly, the act of alighting therefrom may constitute contributory negligence as a matter of law if the person so alighting is in a weak physical condition or of advanced age." "Even in jurisdictions where the mere act of alighting from a moving railroad train or street car is not considered negligence *per se*, it is well recognized that cases sometimes arise in which the facts are so clearly established, and the inference as to the course dictated by ordinary prudence is so certain and invariable, that it becomes the duty of the court to take the question from the jury. Thus it has been held that where the act is obviously dangerous and without reasonable necessity, real or apparent, it constitutes contributory negligence as a matter of law, and defeats a recovery by the person injured." 1 Am. & Eng. Anno. Cases, 778, citing many cases. A conductor agreed to let a passenger off at a station and the conductor rang the bell for a stop. The train did not stop. *Held,* "When the train fails to stop at the station of destination of a passenger, and he is not directed or induced at the time by act or word of the company's agent to get off, and he does get off, he does so at his own risk." *East Tenn., Va. & Ga. Co.* v. *Massenghill,* 15 Lea 328. "The general rule is, that passengers injured while getting on or off moving trains cannot recover for injuries. The act of getting on or off a moving train is evidence of contributory negligence, and imposes upon one who is injured in doing so the burden of proving that the peculiar circumstances of the case justified him in such course." *Browne* v. *Railroad Co.,* 108 N. C. 34. I find the following syllabus from the United States Circuit Court of Appeals in *Illinois Central* v. *Davidson,* 64 Fed. 301: "A passenger who unnecessarily and negligently exposes himself to danger while alighting from a train is guilty of contributory negligence, even though he does not know of the danger to which he is exposed." The Texas case, *International &c. Co.* v. *Rhoades,* 51 S. W. 517, holds, "Where a passenger was injured in alighting from a moving train he cannot recover, even if he was not guilty of negligence, unless the agent or defendant in charge of the train invited him to so alight, and in so doing he acted with ordinary prudence." "The conductor is

required, after having at the proper time announced the station, to stop the train and hold it such reasonable time as will permit passengers to alight in safety. He is not required to do what in many cases would be impossible to ascertain—to know—that all passengers intending to stop at the station have alighted in safety." *Raben* v. *Central Iowa Railroad Co.*, 73 Iowa 581. "This instruction was erroneous in the particular that it asserts that 'such railroad company is bound to exercise the strictest vigilence in carrying passengers to their destination, *and in setting them down safely thereat.*' This in its latter portion states the law too strongly in favor of the plaintiff. All the duty the law imposes upon a conductor, acting as the agent of a corporation, in order to comply with the obligations of the carrier to a passenger, is to carry him safely to his point of destination, announce the arrival of the train at the station and give him a reasonable oportunity to leave the cars. When this is done, the duty of the conductor ceases. *Sevier* v. *Railroad,* 18 A. & E. R. R. Cases 245; *Straus* v. *Railroad,* 75 Mo. 185. And when the servants of a corporation, engaged in the business of a common carrier, afford passengers a reasonable time to leave the cars after arrival at the end of their journey, they have the right, at the expiration of such reasonable period, to presume that all the passengers, whose place of destination is then reached, have done what is customary for passengers in like circumstances to do to-wit, have left the cars." *Hurt* v. *St. L. L. M. & S. Ry Co.,* 94 Mo. 262.

But the negligence of Porter did not consist alone in getting off the train while in motion. He held to the railing of the car for three steps and was thrown under the train. All the witnesses say this. It is beyond question. This was gross negligence. Porter was in full possession of his faculties. A moving train, increasing speed every inch, is a dangerous carriage from which to alight. Even if going slowly, its momentum makes it dangerous to alight from it. In the case of *Diddle* v. *Continental Co.,* this term, we said that reckless or deliberate encountering of known danger, or danger so obvious that a reasonably prudent man would have avoided it, if the circumstances do not necessitate encountering it, is a voluntary exposure to danger; that unconsciousness of danger does not change the case; that if the danger is obvious, and nothing to preclude deliberation or free-

dom of action, such as sudden peril, and he encounters danger, the exposure is voluntary. See 67 Ohio St. 153.

The defendant asked, but was refused, an instruction that the evidence was not sufficient to authorize a verdict for the plaintiff and that the jury should find for the defendant. Now, the evidence plainly shows that Porter was under no necessity to get off the train while moving and increasing its speed. It was simply a rash act of his own for mere convenience, when he could have gone a mile or so further on the train and come back in a few hours. Law above shows that he was chargeable with negligence *per se* under the evidence. Negligence in law. That would inevitably call for a verdict for the defendant, even if we could say, as we cannot, that the company was in fault. We have often said that where the evidence is such in cases of negligence as that the court would be compelled to set aside a verdict for the plaintiff, there the court ought, if asked, direct a verdict for the defendant. *Ketterman* v. *Railroad Co.*, 48 W. Va. 606; *Cobb* v. *Glenn Boom Co.*, 57 *Id.* 49. In *White* v. *Brewing Co.*, 51 W. Va. 259, the same test is made, that is, that the court should instruct a jury for a party in whose favor the evidence "plainly and decidedly preponderates." Judge DENT said that when the evidence was such that two reasonable minds could not differ the court should not hesitate to direct a verdict "for thereby justice is promoted, a useless controversy brought to an end and time, cost and fruitless labor saved to litigants, the court and the public." The same principle is in *Diddle* v. *Continental Co.*, decided this term. The Supreme Court of the United States said that it was settled law in that court "when the evidence given at the trial, with all inferences the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. *Louisville &c. Co.* v. *Woodson*, 134 U. S. 614. A vast array of authorities for this proposition will be found in Blashfield on Instructions, section 5. The court should have given the instruction to find for the defendant. The defendant is entitled to have that matter of error passed on in this Court.

This Court is of the opinion that the circuit court should have directed a verdict for the defendant. We are clear about this;

but the great question then comes up, shall this Court render final judgment for the defendant, or set aside the verdict, reverse the judgment and remand the case to the circuit court? My own opinion is, long has been, that this Court should do what the circuit court should have done, which would be, after verdict for the defendant, as if on demurrer to evidence to render final judgment for the defendants. The plaintiff made his case, and if his case was bad he ought to lose it by final judgment. The suit ought thus to end. This Court has so decided in two cases, *Maupin* v. *Insurance Co.,* 53 W. Va. 557, and *Ruffner Bros.* v. *Insurance Co.,* 59 *Id.* 432. (I later add *Anderson* v. *Tug River Co.* 59 *Id.* 301 and *McMillan* v. *Coal Co.,* 61 *Id.* 535). It was decided otherwise this term in *Diddle* v. *Continental Co.* See full note 8 Amer. & Eng. Anno. Cases 873. I shall not discuss this point further. A majority of the Court think that final judgment should not be rendered here, especially as the practice has been generally otherwise, as in *Kuykendall* v. *Fisher,* 61 W. Va. 87. I suppose it true that in the past the practice, I say *practice,* has been to remand. I would reverse that practice, it being a mere matter of practice. All say that if it clearly appears that the plaintiff cannot better his case, this Court may render final judgment.

Instruction No. 8 says that if the train did not stop long enough to enable Porter to leave it while stationary, and that he stepped off while the train was in motion, it was a question for the jury to say whether he was guilty of negligence and barred from recovery. The law is that if a man leaves a moving train, he does so at his own risk, it is negligence *per se,* negligence in law, for which the court may withdraw the case from the jury.

Instruction No. 4 told the jury that it was the duty "of the defendant to use the greatest possible care and diligence to safely carry and deliver Porter to his destination, and to stop long enough to afford him reasonable opportunity, by the use of ordinary diligence on his part, to alight, and not to start until he had alighted, if, by the exercise of great diligence, said defendant could have known that Porter was in the act of alighting," the verdict must be for the plaintiff. This instruction might be readily construed as requiring the trainmen to see that every person wanting to get off had gotten off. It demands

that a railroad company must exercise great diligence to know that a passenger is alighting. It is the duty of the passenger to get off the train, and the conductor does not have to hunt each and every one up. Of course, where the conductor knows one is alighting he can not start, but he need not examine every car in a train to see who wants to get off, or that every one has gotten off. But why discuss these instructions? They all declare that if the company was negligent in not stopping long enough or not seeing to it that Porter was off, then it was liable. They ignore the fact that under the evidence in the case, the plaintiff's evidence, Porter delayed leaving the car and went from it while moving and held on to it while moving, and was guilty of contributory negligence. If we are right in saying that the court should have directed a verdict, then the plaintiff was not entitled to these instructions, they being unsuited to the case and misleading the jury. Porter's contributory negligence barred recovery.

Again, the court gave for the defendant an instruction that if the train had started while John L. Porter was leaving the car, and was in motion before he went out of said car to the platform, then it was negligence in him to attempt to alight from the car while in motion, and the verdict should be for the defendant. Another instruction was that if the train stopped long enough to allow passengers to alight, and Porter could have left it without injury, had he used diligence, then the jury must find for the defendant. Now, under the evidence there is no question but that the hypothesis of these two instructions was fully sustained, and therefore this verdict under the evidence is contrary to these instructions given by the court. It is a verdict, as shown by the evidence, against the law of contributory negligence. "A new trial will be granted: 1. Where the verdict is against law. This occurs when the issue involves both fact and law, and the verdict is against the law of the case on the facts proved. 2. Where the verdict is contrary to the evidence. This occurs, when the issue involves matter of fact only; and the facts proved require a different verdict from that found by the jury." *Grayson's Case,* 6 Grat. 712.

Therefore, we reverse the judgment, set aside the verdict and remand the case for a new trial if the plaintiff shall be so advised.

## ON REHEARING.

A petition for rehearing attacks the above opinion for saying that the evidence is not conflicting. It is not appreciably so. The plaintiff proved the true status of the case. He proved by Garten, who was face to face with Porter in the car, that Porter stood talking with him, and that either before he left his seat, some ten feet from the door, or before he reached the door, the train started. Young, a witness for defence, definitely corroborates Garten. He was in the car, saw Porter lingering in conversation with Garten, and when asked if the train started before Porter left the platform, answered, "Yes, sir, before he went out of the car, before he left Garten, about the time he left Garten." He said further, "At the time the train started he was shaking hands with Garten, about the time the train started I seen them shaking hands." The plaintiff and defendant both so prove. Keeny, a witness for plaintiff, says "When I first saw Porter he was coming down the steps, the train was moving out as he came down." This renders likely the evidence of Garten and Young; for it shows that Porter did not reach the platform or steps until already the train had started. It was "moving out," how fast Keeny could not say; but it was moving out, and Porter had no right to risk its speed, as any one may be deceived as to speed or momentum of a starting train, and any one knows it may increase momentum rapidly, even suddenly. Dempsey, another witness for plaintiff, says: "The train was moving out when I looked around, and he was on the steps." Again I say he corroborates Garten and Young. He, too, proves that the train had started when yet Porter was on the steps. That the train was moving with considerable, with dangerous, speed when Porter alighted is beyond question from the fact told by several witness for the plaintiff, not contradicted, not open to question, that is, that Porter, holding to the railing, was "jerked" and thrown by the car. If it was merely moving at a snail's gait, why did the train "jerk" him, and throw him? Here is an undisputed fact proving a physical fact from our knowledge of the law of momentum or force, that the train had already attained a dangerous speed when Porter alighted. Further. Dempsey, a plaintiff's witness, says that Kirby, who had taken Porter's bundle out, was standing there on the back side of the

platform as the train pulled out and "I heard him say to Mr.
Carson (brakeman) that old man Porter is on there to get off,
and Mr. Carson throwed out his hand to shut the engineer off,
on the fireman's side, and the fireman, I suppose, was putting
in fire. Mr. Carson didn't get any signal from the engine, and
he jumped up on the coach as quick as he could and pulled the
bell cord, to get hold of the bell cord." This proves that the
train had started while Porter was still on the train. Against
all this evidence, counsel appeal to Houchins and Carson, saying
that Houchins said "The first I saw of him I was standing in
the baggage car door, and he had one foot on the platform and
one on the step, and his right hand holding to the handhold."
Asked how far it had moved when he first saw Porter, answered,
"Well, it was just starting to move." This does not prove that
Porter had alighted *before* the train started. This does not
contradict all the explicit evidence that the train had already
started when Porter got off it. In fact, the fair inference from
it is, that Porter got off while the train was moving, and this
is enough to exempt the company, because under the law, no
one can alight from a moving train except *at his own risk.*
Except under peculiar circumstances this case is not such. Look-
ing at his evidence further I see that he was asked, "When you
first saw him was the train moving?" He answered "Yes, sir."
Counsel in their petition for rehearing admit that the above
opinion lays down the law correctly. But maybe counsel mean
that the train was moving slowly. Houchin says, "Well, it was
just starting to move." This is indefinite. Are we on this frail,
indefinite sentence to contradict and overthrow all the evidence
referred to in the original and this opinion? It does not con-
flict with it really; no substantial conflict. Afterwards Houchins
qualifies this statement by the statement that when he saw Porter
the train was moving. Counsel cite us to a statement in the
evidence of Carson that just as he gave the signal to start he got
on the train, looked back and saw Porter fall. But the plaintiff
by Dempsey proved, as above stated, that when Kirby told Carson
Porter was yet on the train Carson signaled the train to stop
and ran for the bell cord. This denies that when Carson stepped
on the train Porter was just alighting. Counsel do not say
from this that Porter had alighted when Carson saw him, but
was in the act of alighting. He could not safely do so. But

go further with Carson's evidence. The question was put to him, "Did you see Porter step to the ground?" Answer, "No, sir, I didn't see him, I don't know whether he was on the coach or the platform, could not tell." Question, "Do you know how far the train had moved before you saw Porter falling back?" Answer, "No, sir, I could not tell." Having stated that he gave signal to start, and got on, and saw Porter just as the train moved, it was stated to him that then Porter must have been on the step when he (Carson) saw him, he answered, "I could not tell where he was." Can we say from Carson where Porter was when Carson signaled to start and got on the train? Can we say the train was not going, or going slowly, when Porter got off it? No tribunal, whether judge or jury, having to deal impartially, from reading *all* the evidence, indeed from reading only the plaintiff's evidence, can help finding, as facts, first, that Porter was yet in the car when its wheels began to move, and, second, that when Porter got off the car its movement was dangerous, as shown by the fact that it jerked Porter and threw him. To say otherwise would be a travesty upon weighing and dealing with human evidence. If the train was moving, though apparently slowly, he could not get off except at his own risk, except under peculiar circumstances. This case is not such. The evidence does not really conflict. Suppose it did. Counsel would have us say, therefore, that a court is powerless to overthrow a verdict. That is not law. Though evidence be conflicting, if the verdict is without sufficient evidence, plainly against the decided, clear preponderance, it may be set aside. *Yeager* v. *Bluefield,* 40 W. Va. 484.

We would not have further detailed evidence beyond the reference to it in the original opinion but for the assertion in the petition for rehearing that we had heard the case, on only *"some* of the evidence adduced by the plaintiff," and tried a case not presented to the jury. We dislike to express opinions on evidence, or detail it, as we do not feel that on mere questions of fact an appellate court is called upon to detail evidence, or go further than find the result and announce it; but as the petition calls on us to do so, we make this review of the evidence. But for that we should not have done so. We reach the judgment on the evidence, taken as a whole, on the plaintiff's evidence. It is not sufficient to sustain the verdict. *Reversed.*