## PASSENGER THROWN FROM CAR STEP BY SUDDEN STARTING OF CAR.

Common Pleas Court of Hamilton County.

OWEN W. GRUBBS v. THE CINCINNATI, LAWRENCEBURG & AURORA STREET RAILWAY COMPANY.*

Decided, April 4, 1914.

*Negligence—Passenger Preparing to Step from Car—Thrown by Sudden Starting of Car—Misconduct in Argument to Jury—Proper Test as to, Considers the Manner of the Speaker as Well as the Words Spoken—Charge of Court.*

1. Statements by counsel in his argument to the jury, which when placed in cold type may be susceptible of a veiled or insidious meaning, will not be so regarded by the court and treated as misconduct, where at the time they were uttered there was nothing in the manner of the speaker to indicate that they were meant to be harsh or offensive, but the impression produced was rather that they were spoken in a facetious mood.

2. Where a charge is not prejudicial and covers fairly all the points raised by the pleadings and evidence, a new trial will not be granted because in the opinion of counsel the verbiage might have been improved.

3. A passenger on an interurban car, which is approaching a regular stop at which the passenger intends to alight, and the name of the station is called by the conductor, has a right to assume when the car has been brought almost to a standstill that it will be brought to a full stop and he can take his stand on the step with safety, and when in so doing he is thrown from the car and injured by it being suddenly started, the proximate cause of the accident is the negligence of the motorman in giving the car the sudden jerk forward, rather than of the passenger in taking his stand on the car step.

*Stanley Shaffer*, for the motion.

*George B. Goodhart, C. B. Matthews* and *James B. Swing,* contra.

---

*Affirmed by Court of Appeals without opinion. Motion by the defendant to dismiss the petition in error allowed by the Supreme Court, May 4, 1915.

NIPPERT, J.

This is the third time that this action has been presented to the jury.

Upon the first trial the plaintiff recovered judgment against the defendant company in the sum of $3,500, which, however, was reversed by the circuit court by reason of the fact that the plaintiff failed to sustain the allegations of his petition by a preponderance of the evidence.

Upon the second trial, the testimony given by plaintiff explained the alleged acts of contributory negligence charged against him by the defendant company, but the trial court, in the second trial, evidently did not deem the explanation sufficient to warrant the case to go to the jury and directed a verdict in favor of the defendant. The court of appeals, upon an examination of the record, found that the case should have been submitted to the jury on the ground that the plaintiff's testimony explaining his getting off of the car qualified the testimony given at the former trial in such a manner that it was error for the court below to take it from the jury, and the court of appeals sent it back for the third trial, which resulted in a verdict of $6,000 against the defendant company.

The plaintiff was not present at the third trial, but his testimony given at the second trial was read *verbatim* into the record. So that, following the ruling of the court of appeals, it would have been error to have taken the case from the jury at the conclusion of plaintiff's testimony, as requested by the defendant company.

Both parties to this action have submitted exhaustive and carefully prepared briefs on the various phases of the case as presented to the court, and the court has given careful thought and research to the various matters submitted by counsel.

The defendant company places its contention for a new trial upon three grounds, to-wit:

1. That the verdict is against the weight of the testimony and is not sustained by sufficient evidence.

2. That there was error in the charge of the court.

3.   That there was misconduct of counsel in the argument of the case prejudicial to the defendant.

I will take up the charge of misconduct of counsel first, for I believe if there is any place where the ethics of the profession should be observed in the minutest detail and where counsel on either side is entitled to that respect and courtesy which the high calling and learning of the profession demands, it is in the forum of our courts of justice.  How can the bar expect to merit the honor and respect of the jury and the court if, in their relationship as officers of the court and members of a great profession, they are derelict in the duty which they owe to the courts by attempting to inject into a case, either by incompetent questions or invidious argument, uncalled-for statements reflecting upon the integrity or honesty of purpose of opposing counsel; and this court would not hesitate to reprimand any one who deliberately would be guilty of such conduct.  In fact, if the court had in this instance, which is now relied upon by defendant's counsel as sufficient cause for a new trial, received the same impression that the complainant evidently received, or if the court thought that the jury had thus absorbed a biased and prejudiced view of counsel and his client, the court would then and there have withdrawn a juror and continued the case; but, knowing both counsel and being fully acquainted with their high character as gentlemen and lawyers, who, even in the heat of battle, are mindful of the duty which they owe to the court and their profession, the court can scarcely bring itself to view the alleged misconduct in the same light and with the same seriousness as the complainant.

The court remembers distinctly the statements made by plaintiff's counsel to which the defendant took exceptions, but is not inclined to give it the weight attributed to it by the defendant, and the court can not agree with the defendant that by reason of plaintiff's counsel's remarks to the jury in his opening argument, the minds of the jury were unduly prejudiced or influenced in favor of the plaintiff and against the defendant.  It might have been better and would have been better and wiser if

the statements had not been made, and in cold type they may bear the imprints of veiled and insidious reflections upon defendant's counsel, but the *manner* in which these words were spoken was not offensive nor harsh, but gave the court the impression of being more facetious than offensive, and further, as the court instructed the jury to disregard what was said by plaintiff's counsel and cautioned plaintiff's counsel to confine his remarks to the record, it does not appear to the court that sufficient injury, if any, has been done to defendant's cause to warrant the granting of a new trial on that point.

The second ground upon which defendant seeks a new trial is that the court committed error in its charge to the jury, in this particular, to-wit: that the court presented an issue not raised by the pleadings or the evidence in the case by referring to the act of the plaintiff in leaving the car when the car had come to a full stop, and that while plaintiff was about to step off of the car, the car, without warning, started forward, causing plaintiff to be thrown to the ground.

There was some variance in the testimony as to whether or not the car had come to a full stop, or whether the car had merely slowed up for the Big Four crossing at that point. Some witnesses testified that the car had come to a full stop when the plaintiff was on the platform ready to leave the car, and there was also testimony to the effect that the car was moving so slowly when the doctor reached the last step on the platform that it was impossible to tell whether or not the car was still moving or had come to a full stop, and there was testimony that the car was moving three to four miles an hour when plaintiff alighted. This was a question of fact to be submitted to the jury, and it was submitted to the jury in the court's charge in as explicit language as the court was able to put it. It must be realized that the testimony was contradictory and presented a proposition somewhat complicated and which could not be covered by the court in a single paragraph of the charge. The charge must be taken as a whole, and if the issues are fairly presented by the court to the jury in the court's instructions, the

verdict should not be set aside by reason of the fact that in the opinion of either counsel the verbiage of the charge might be changed or improved upon to comply with their ideas or convictions, if the charge is not prejudicial and covers fairly all of the points raised by the pleadings and the evidence.

The court feels that in its instructions to the jury it fairly and fully covered the various points raised by both plaintiff and defendant and put into the general charge the substance of some of the special charges requested by the defendant.

The failure of the court to grant the special charge requested by the defendant, with reference to getting off of a moving car, can hardly be considered prejudicial error as the substance of this special charge was embodied in the general charge and covered fully the point in question, and defendant did not insist upon the special instruction being given to the jury.

Coming now to the third ground upon which defendant asks a new trial, i. e., that the verdict is against the weight of the evidence, the testimony shows that on the evening of the 29th day of April, 1905, the plaintiff, Dr. Grubbs, was a passenger on the traction car operated by the defendant company on its Lawrenceburg extension, having boarded the car at Lawrenceburg, Indiana, and paid his fare to Valley Junction, to which place the company sold tickets or collected fares, and which was a regular stopping place for passengers who desired to change cars to the Harrison branch of the same company, and where the cars of the traction company always came to a stop for the purpose of giving the conductor an opportunity of going ahead to see whether the Big Four steam railroad tracks, which crossed defendant company's tracks at that point, were clear and safe for passage. As the car slowed up for the Valley Junction stop the plaintiff left his seat in the rear of the car and went out to the back platform. He got on the lower step on the north side of the platform, preparatory to stepping off, when the speed of the car was suddenly increased and he fell, sustaining the injuries complained of, and for which the jury gave him damages in the sum of $6,000.

Plaintiff's testimony leaves it uncertain whether the car had come to an absolute dead stop, or whether it still had a barely perceptible motion. This difference is unsubstantial for the negligence charged by plaintiff against the defendant company was the sudden *starting* of the car to an increased speed while he was in the act of getting off.

While there are a great many cases which hold that the act of a passenger in voluntarily leaving a car while it is in motion constitutes contributory negligence, yet the better doctrine and that sustained by the greater weight of authority is that such conduct on part of the passenger is not negligence *per se*.

There may be exceptional circumstances attending the attempt of a passenger thus to alight, such as the great speed of the car, the age or infirmity of the passenger, combined with the darkness of the night, or other facts which render the attempt so obviously dangerous that the court may, where the testimony is undisputed, declare as a matter of law that the passenger's conduct was reckless and negligent, but ordinarily it is for the jury to say whether he acted as a reasonably cautious and prudent man would act under the same circumstances, and I am inclined to believe that this is one of the cases where it was proper for the jury to decide from all of the evidence whether or not plaintiff's conduct, under the particular circumstances in this case, warranted a recovery against the company.

In the case at bar, some of the material facts are disputed; in the first place, the position of the passenger at the time when the car started, and the speed of the car when plaintiff alighted, and different inferences may be reasonably drawn therefrom, and whether the plaintiff was guilty of such contributory negligence as to preclude a recovery is a question of fact exclusively within the province of the jury.

The court does not feel that it is negligence in law for a passenger to attempt to alight from a car moving so slowly that to alight therefrom would not appear dangerous to a man of ordinary prudence, and such a question of negligence should be

submitted to the jury, for it is not negligence under all circumstances and conditions to attempt to alight from a moving car.

Dr. Grubbs had paid his fare to the conductor as far as Valley Junction and he, as well as the conductor, testified that when the car was nearing the station at Valley Junction the conductor called out "Valley Junction, change cars for Harrison," and the car commenced to slow down in the usual manner for a stop. When the car reached the station at Valley Junction, plaintiff got up promptly and left the car. So, when the car slowed up on approaching the station at Valley Junction and on approaching the railroad crossing of the Big Four railroad, which is also located at that point, the plaintiff had a perfect right to assume that it was being slowed up for the purpose of enabling him to get off, and further to enable the conductor to run ahead to see if the Big Four railroad track was clear, and it was proper for him to assume that the car's speed would be gradually lessened until it had come to a *full stop* at the crossing, rather than be increased with a sudden jerk. He assumed, of course, the risk of the ordinary movement of a car slowing up at a junction point to let off a passenger, but not the risk of a sudden negligent movement at the very place where and moment when it should have stopped and where in view of the commonly known custom of passengers on this line those in charge of this car, in the exercise of that degree of care which the law enjoins upon public carriers, should have known of the position of the plaintiff.

I agree with the argument of counsel for the defendant that Dr. Grubbs placed himself where he was in danger of falling off and being injured as a result of a sudden start before he had gotten safely off, but that was a risk he could not have anticipated because he had a right to assume that the car would stop long enough to allow him to get off safely, and if it had so stopped, as it should have done, no accident could have happened. His position on the step of the car was that ordinarily assumed by one about to step from a car and whether he exercised ordinary diligence and care while in that position was a question for the

jury.  Some of the testimony showed that the speed of the car at the time was between three and four miles an hour, while other testimony showed that the car was going very slow, scarcely moving.

Let us examine the record on this point.  The motorman of the defendant company, who was in charge of the car on the evening of the accident, testified positively that the car had come to a full stop for the purpose of allowing passengers to alight and in order that the conductor might go forward to the tracks of the steam railroad to flag the motorman to cross.  The conductor testified that all cars bound towards Anderson's Ferry stop immediately before crossing the Big Four railroad at Valley Junction, and that this particular car on which Dr. Grubbs was a passenger came to a full stop before it proceeded across the tracks of the Big Four railroad at Valley Junction, and that prior to his getting off the rear end of the car to go forward to the railroad crossing and motion the motorman to come across he called "Valley Junction:"  The conductor further testified that before the car had come to a full stop he alighted to run ahead of the car.  In reply to a question on the point of whether or not the conductor saw the plaintiff, the record shows the following on page 156:

"Q.  State whether or not you saw him (Dr. Grubbs) in the act of alighting from the car upon which you were conductor at 7:18 o'clock in the afternoon of April 29, 1905.    A. I did not see him.

"Q.  State whether or not at that time and place you saw him arise from a seat in the car and do anything to indicate that he intended or desired to alight from that car at that time and place?   A. I did not."

According to the testimony of both the motorman and the conductor the car had come to a full stop at a regular stopping place, and it was the conductor's duty not to start the car before passengers had a reasonable opportunity to get off safely, and his failure to do so would be negligence.

In view of the fact that the conductor left the car before the car had come to a stop, and in view of the fact that the plaintiff occupied the second seat from the rear platform, it might well be possible that between the time that the conductor had left the car and reached the crossing, the plaintiff, without being seen by the conductor, could have reached the steps of the car prior to his getting off.

If the car only slowed up and did not come to a full stop, as may be inferred from the testimony of Dr. Grubbs and Mr. Longenecker, having reached a regular stopping place provided by the rules of the company as well as by the law of the state, it was not negligence for passengers who had bought their transportation to that point from the conductor in charge of the car to get onto the steps in anticipation that the car was slowing up for the purpose of making the usual stop, and if they got off before the car had fully stopped and were hurt by a sudden increased speed of the car due to the signal of the conductor to the motorman, then it was a matter for the jury to decide whether, under such circumstances showing some negligence on part of the passenger, the proximate cause of the injury was the sudden speeding up of the car and the failure of the conductor to see and ascertain that none of his passengers were in the act of alighting.

The jury having found by its verdict that the plaintiff was in the exercise of ordinary care and that the company was negligent in the manner alleged by the plaintiff, the court does not feel justified to hold that, under such circumstances and in face of the evidence, conflicting though it may be, the verdict is not sustained by sufficient evidence. This is the third trial of this cause since the happening of the accident, April 29, 1905, and the size of the verdict and the peculiar circumstances surrounding the accident warranted the court in examining diligently every page of the record, reading carefully the excellent briefs of counsel and searching the numerous authorities submitted on both sides, in addition to many other citations referring to cases of similar nature, and the court, after mature deliberation, has

reached the conclusion that defendant's motion for a new trial should be overruled.

Authorities examined in addition to those cited by counsel: Booth on Street Railways, par. — ; 140 Wis., 455; 64 S. E., 536; 12 C.C.(N.S.), 327; 31 Ky. L. R., 480; 127 N. W., 330; 111 Mo. App., 653; 67 Ohio State, 153; 137 Mich., 392; 110 N. Y. Supp., 125; 30 Ind. App., 193; 136 Mich., 142; 120 Ala., 152; 102 Mo. App., 277; 125 Mo. App., 710; 147 Ala., 702; 116 Mo. App., 37; 147 U. S., 572.